# EXHIBIT A

1

2

3

4          IN THE CIRCUIT COURT OF THE STATE OF OREGON

5              FOR THE COUNTY OF MULTNOMAH

6   BLAZE CONE COMPANY,

7              Plaintiff,                        No.

8        v.                                      COMPLAINT

9   CHUBB INDEMNITY INSURNACE                    Breach of Contract; Breach of the Duty of
    COMPANY,                                     Good Faith and Fair Dealing; Negligence
10                                               Per Se (ORS 746.230); Declaratory
             Defendant.                          Judgment (ORS 28.010, *et seq.*)
11
                                                 Fee Authority: ORS 21.160(1)(d)
12
                                                 Prayer Amount: $7,571,351.58
13

14

15                                               (CLAIMS NOT SUBJECT TO
                                                 MANDATORY ARBITRATION)
16

17       Plaintiff Blaze Cone Company ("Plaintiff") alleges as follows:

18                          **PARTIES**

19                            **1.**

20       Plaintiff is an Oregon corporation with its principal place of business in Portland,

21  Multnomah County, Oregon. Plaintiff is a locally owned and operated small business that

22  specializes in buying and reselling traffic safety cones and other safety products, as well as

23  renting out work zone traffic control equipment.

24                            **2.**

25       On information and belief, Defendant Chubb Indemnity Insurance Company

26  ("Defendant") is a New York corporation with its principal place of business in Philadelphia,

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380   Fax 503.220.2480

1    Pennsylvania. Defendant is an insurance company transacting insurance under ORS 731.146

2    by engaging in numerous insurance-related activities in Oregon, including, but not limited to,

3    issuing or delivering insurance policies, collecting premiums, and investigating and adjusting

4    claims or losses.

5    **JURISDICTION AND VENUE**

6    **3.**

7    This court has subject matter jurisdiction over contract disputes. This court has personal

8    jurisdiction under ORCP 4 because Plaintiff is a corporation created under the laws of this

9    state, and Defendant is engaged in substantial and not isolated activities within this state.

10   Venue is proper in Multnomah County because Defendant is not a resident of Oregon, and

11   therefore the action may be commenced in any county pursuant to ORS 14.080(1).

12   **BACKGROUND FACTS**

13   **4.**

14   Plaintiff's owner, Glen Ellis, a citizen of Multnomah County, Oregon, owns an

15   industrial building complex located at 16825 SE 130th Avenue in Clackamas, Oregon

16   ("Property"). Plaintiff, Glen Ellis, and a third entity, BF Properties, are alter egos of each other

17   for purposes of the Property's ownership, insured interests, and lessor interests.

18   **5.**

19   The Property's main structure (approximately 32,500 square feet) was originally

20   constructed around 1971 and expanded in several phases.

21   **6.**

22   At the time of loss, the west half of the Property was leased to Stages Northwest and

23   the east half to Source Automotive.

24   **7.**

25   The Property was of Type V construction, with a wood-framed roof (wood purlins

26   supporting corrugated metal panels) spanning steel trusses and was neither sprinklered nor

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380   Fax 503.220.2480

1   equipped with permanent restrooms (tenants used external facilities).

2                              **8.**

3          On October 31, 2022, a fire broke out inside the Source Automotive tenancy on the east

4   end of the Property.

5                              **9.**

6          The fire was severe and spread through the interior of the main structure. The fire's

7   intensity blew out multiple large translucent panels and exposed large portions of the

8   Property's structural framework to extreme heat.

9                              **10.**

10         Local fire authorities responded and extinguished the fire, but not before it caused

11  significant structural and material damage throughout the Property.

12                             **11.**

13         In the days following the fire, Plaintiff took steps to secure the Property and mitigate

14  further damage.

15                             **12.**

16         An emergency restoration contractor, Paul Davis Restoration, performed board-up

17  services to cover openings and stabilize the structure.

18                             **13.**

19         Debris was cleared and the site was made safe for inspectors.

20                             **14.**

21         Plaintiff promptly notified Defendant, the insurer of the Property, of the loss and made

22  the Property available for investigation.

23                             **15.**

24         By mid-November 2022, Defendant's adjuster (Rowena Buist) and consultants were

25  on site coordinating with Plaintiff's representatives and contractors.

26  ///

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380   Fax 503.220.2480

Page 3 - COMPLAINT

**16.**

On November 18, 2022, Defendant specifically requested that the restoration contractor, BELFOR Property Restoration ("BELFOR"), work directly with Defendant's retained building consultant, Young & Associates ("Y&A"), to develop the scope and estimate of necessary repairs, with Plaintiff's public adjuster included in communications.

**17.**

Defendant, at that stage, acknowledged coverage for the loss, and on January 14, 2023, issued payment of the emergency board-up invoice and an initial advance toward building repairs.

**18.**

Investigations revealed that the October 31, 2022, fire caused extensive structural damage to Plaintiff's Property. The roof system and supporting steel framework were particularly hard-hit by heat and flames. Large sections of the wooden roof purlins were severely charred or consumed by fire.

**19.**

Many of the exposed open-web steel roof trusses were found to be oxidized, warped, and deformed due to high temperatures. Steel cross-bracing (angle X-braces between the steel frames) was also severely bent and distorted by the heat of the fire.

**20.**

Widespread heat damage was visible on the Property's metal panels and structural members—siding and roof panels were discolored and buckled, and even some heavy steel columns were darkened by heat (though the main columns did not appear to buckle).

**21.**

The damage to the Property was documented in photographs and reports prepared during the damage assessment.

///

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380   Fax 503.220.2480

STOEL RIVES LLP

760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380   Fax 503.220.2480

**22.**

The Property housed two large overhead bridge cranes (an East crane in the Source Automotive bay and a West crane in the Stages Northwest bay) used for lifting heavy materials.

**23.**

Both crane systems were subjected to the fire and heat. Post-fire inspection noted that the cranes' surfaces were darkened by soot and heat exposure

**24.**

The East crane, located closest to the fire's origin, was rendered inoperable and effectively a total loss.

**25.**

The West crane, farther from the blaze, did not suffer obvious immediate failure, but did sustain damage: a specialized inspection after the fire found components of the West crane that needed repair or replacement.

**26.**

In early 2023, a professional team was engaged to thoroughly assess the structural damage and plan for repairs. This team included structural engineer Ken Oliphant, P.E., S.E. of Advanced Structural Forensics ("ASF") and architect Gary Livermore, A.I.A., P.E. of Livermore Architecture & Engineering. Mr. Oliphant was agreed to as the engineer by BELFOR and Y&A.

**27.**

With Defendant's knowledge and participation, multiple site inspections and tests were conducted. On April 6, 2023, representatives of Plaintiff, restoration contractor BELFOR, and ASF's engineer, met on site with Defendant's adjuster (Ms. Buist) and Defendant's consultant (Y&A) to discuss investigation plans.

**28.**

The parties agreed to undertake metallurgical testing of steel structural members and

1    destructive examination of certain concrete footings, with Defendant funding these efforts.

2    **29.**

3    Under that plan, a metallurgical engineer (Mark Lisin of Lisin Metallurgical Services

4    LLC) analyzed steel samples from the building, and BELFOR performed localized demolition

5    of floor slab and excavation of soil to expose the Property's foundation footings for evaluation.

6    **30.**

7    These investigations were completed in the spring and summer of 2023 and yielded

8    critical information about the structural integrity of the fire-damaged Property.

9    **31.**

10    The investigative findings not only catalogued fire damage but also uncovered

11    underlying structural deficiencies in the Property. Notably, the Property's lateral-load resisting

12    system was found to be structurally deficient. The original design included unusual

13    "discontinuous" steel buttress frames in the west portion of the Property—essentially, steel

14    columns supporting the roof trusses that did not continue down to the foundation, instead

15    attaching to side columns that supported an overhead crane beam.

16    **32.**

17    ASF's engineer observed that these discontinuous frames had a "grossly deficient

18    lateral load path," meaning they were not capable of resisting code-required seismic and wind

19    loads even. When BELFOR opened up the floor, it was discovered that the concrete footings

20    under these areas were undersized and inadequately reinforced as well.

21    **33.**

22    On August 25, 2023, ASF (Ken Oliphant) issued a comprehensive report (the "Blaze

23    Cone Damage Assessment Report") detailing the full extent of structural damage and the

24    recommended repair approach. His report (23 pages plus figures) documented numerous

25    specific findings, including: (1) pervasive charring of wood roof members throughout the

26    building; (2) severe heat deformation of steel roof trusses and steel bracing; and (3) the need

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380   Fax 503.220.2480

1    to replace or significantly repair these elements. The report referenced the metallurgical

2    analysis, which confirmed that the steel trusses and steel X-braces were metallurgically

3    compromised by the fire and required complete replacement. It also noted that the welded

4    connections of the crane runway beams appeared to have survived the fire. Crucially, ASF's

5    engineering analysis concluded that the degree of structural damage met the threshold of

6    "Substantial Structural Damage" as defined in the building code—both for gravity load-

7    carrying components and for vertical elements of the lateral force-resisting system. In practical

8    terms, this meant that simply patching the visible damage would not be code-compliant; the

9    affected structural systems would have to be brought up to current code standards as part of

10   the repair.

11                                                **34.**

12           According to ASF's report and preliminary design work, the necessary repair scope

13   was expansive. Among the major components were: (1) full removal and replacement of the

14   entire roof structure, including all roof trusses and purlins, because the fire had either destroyed

15   them or reduced their capacity such that new, code-compliant roof framing (likely a steel deck

16   system with closer truss spacing) was required; (2) replacement of all fire-damaged steel

17   bracing and introduction of additional structural steel to ensure the building meets modern

18   lateral load requirements (for example, adding steel beams and gusset plates between frames

19   to reinforce the new bracing system); (3) demolition of the deficient "discontinuous" steel

20   frames on the west end and rebuilding them as proper continuous frames with new steel

21   columns running to new concrete footings; the new footings and frame members would be

22   engineered to handle current seismic forces; (4) retrofitting the remaining original frames on

23   the east end – for instance, the heavy W12x72 steel columns on that end could stay, but their

24   diagonal buttress members needed to be upsized (from W8 sections to W12 sections) and their

25   base connections strengthened with added concrete and rebar in the footings; and (5) reworking

26   the connections between the main building and the adjacent additions — the report anticipated

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380   Fax 503.220.2480

1   that a seismic separation joint might be required between the rebuilt main structure and these

2   abutting structures, which could entail demolishing an existing Concrete Masonry Unit (CMU)

3   wall and creating a gap or other solution so that the addition structures do not impose loads on

4   the main building's new frames. In summary, ASF's findings made clear that the Property

5   could not simply be "repaired" back to its old state; it would effectively need partial rebuilding

6   and structural upgrading to meet building and safety codes.

7                                          **35.**

8       Plaintiff's contractor BELFOR produced a detailed rebuild estimate after reviewing

9   Mr. Oliphant's report of August 25, 2023, Y&A's rebuttal report of January 29, 2024, and Mr.

10  Oliphant's rebuttal to the Y&A report, dated May 31, 2024. As of August 2024, the estimated

11  cost to restore the Property to its pre-fire functionality (while complying with current codes)

12  was approximately $9.6 million. This estimate explicitly followed the scope outlined in ASF's

13  May 31, 2024 supplemental engineering report. The high cost reflects not only the sheer extent

14  of fire damage (replacement of the roof, cranes, and numerous structural members) but also

15  the necessary structural upgrades and code compliance measures (such as installing larger

16  footings, stronger frames, and a code-compliant roof diaphragm).

17                                         **36.**

18      The October 31, 2022 fire catastrophe caused millions of dollars in damage to the

19  Property and will require a major reconstruction effort to fully restore the structure.

20                            **INSURER-SPECIFIC FACTS**

21                                         **37.**

22      Defendant issued Insurance Policy No. D96754681 to Plaintiff, effective for the policy

23  period of January 1, 2022 to January 1, 2023 ("Policy"), which provided commercial property

24  insurance covering, among other premises, the Property, and included blanket building

25  coverage with a Limit of Insurance of $6,050,000, as well as coverage for increased costs of

26  construction required by ordinance or law.

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380   Fax 503.220.2480

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Main 503.224.3380   Fax 503.220.2480

**38.**

Plaintiff promptly notified Defendant of the fire loss and fully cooperated with Defendant's investigation from the outset.

**39.**

Within days of the fire, Defendant had assigned a claim number (Claim No. 092023000718) and deployed an adjuster, Ms. Buist, to investigate the loss.

**40.**

In November 2022, Plaintiff, Ms. Buist, and Defendant's designated consulting firm Y&A began coordinating on the emergency repairs and the development of a repair scope.

**41.**

Plaintiff granted prompt access to the Property for all inspections.

**42.**

Defendant's involvement early on included approving and paying for initial mitigation work; for example, on January 14, 2023, Defendant paid the $22,928.24 invoice for emergency board-up and issued a $250,000 advance toward the building claim.

**43.**

At that stage, Defendant did not dispute coverage and appeared to engage in the claim adjustment productively.

**44.**

In the first few months post-loss, both Plaintiff and Defendant recognized that an expert structural engineering evaluation was needed due to the nature of the damage. The parties agreed to use a single engineering team (ASF and Livermore, both of whom had been retained by Plaintiff) to assess the structural damage and recommend repairs, rather than Plaintiff and Defendant having separate engineering experts, to avoid duplication or conflict.

**45.**

Defendant's consultant Y&A expressly concurred with using Ken Oliphant of ASF as

1    the lead engineer to evaluate the building, instead of Y&A bringing in a separate engineer at

2    that time.

3                                        **46.**

4          Throughout the spring of 2023, ASF's investigation proceeded with Defendant's

5    knowledge. Defendant's consultant (Mike Kalbi of Y&A) participated in joint site meetings in

6    April and May 2023 alongside Plaintiff's team, discussing testing plans and even involving a

7    Y&A engineer (Celia Guess) in a limited peer-review capacity

8                                        **47.**

9          These early collaborations gave Plaintiff a reasonable expectation that once ASF's

10    report was completed, Defendant would work with ASF's findings to adjust the claim.

11                                       **48.**

12          After receiving ASF's damage assessment report on August 25, 2023, Defendant's

13    position changed dramatically. The ASF report concluded that the fire had caused extensive

14    structural damage warranting major repairs and code upgrades. Rather than accepting those

15    conclusions or providing any substantive response, Defendant effectively put the claim on hold

16    and sought out a more favorable opinion.

17                                       **49.**

18          In late September 2023, Defendant informed Plaintiff that it was retaining its own

19    engineer to "review" ASF's report, despite the prior agreement that both parties would rely on

20    one expert for engineering: ASF.

21                                       **50.**

22          Defendant then took an inordinate amount of time to produce this new engineering

23    evaluation. In fact, Defendant did not deliver Y&A's engineering rebuttal report to Plaintiff

24    until January 29, 2024—157 days (over five months) after ASF's report had been submitted.

25                                       **51.**

26          During this period, Plaintiff's representatives repeatedly sought updates and urged

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380  Fax 503.220.2480

1    Defendant to move the claims investigation forward, but Defendant failed to either affirm the

2    full scope of loss or deny it; effectively, the claim was in limbo while Defendant orchestrated

3    a second investigation. This unjustified delay is documented—Defendant's consultant

4    previewed as early as October 2023 that their forthcoming report would likely minimize the

5    damage to avoid triggering code upgrades. Defendant's experts took until the end of January

6    2024 to finalize that position.

7                                          **52.**

8        The engineering report by Y&A (dated January 27, 2024), which Defendant then relied

9    upon, starkly conflicted with ASF's findings. This Y&A report significantly downplayed the

10   extent of fire damage to the Property. For example, it concluded that many of the steel roof

11   trusses did *not* require full replacement and that only select portions of the structure were

12   affected, resulting in an opinion that the repairs could be isolated and would *not* reach the

13   threshold that triggers code-required upgrades.

14                                         **53.**

15       By reducing the count and scope of "damaged" structural members, the Y&A report

16   commissioned by Defendant, calculated the percentage of loss to be below the level that would

17   mandate bringing the entire structure up to code. This was a pivotal point: if no code upgrades

18   were required, then Defendant's liability would be much smaller than if code upgrade coverage

19   applied.

20                                         **54.**

21       Defendant's consultants appeared to be working backwards from a desired outcome—

22   including avoiding a full code upgrade—and therefore selectively minimized the loss.

23                                         **55.**

24       ASF's engineer, upon reviewing Y&A's report, identified "significant errors" in

25   Y&A's analysis that tended to understate damage; he began preparing a rebuttal to correct

26   those errors.

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380   Fax 503.220.2480

Page 11 - COMPLAINT

1

**56.**

2 In a January 12, 2024 conference call, Plaintiff's representatives specifically requested

3 a copy of Defendant's engineer's findings and supporting data so they could understand and

4 respond.

5

**57.**

6 As of mid-January 2024, Defendant had not furnished Plaintiff with a copy of the Y&A

7 report or a clear statement of its coverage position.

8

**58.**

9 Defendant acknowledged that the Y&A report was in progress and promised to deliver

10 it by the end of January 2024. This promise was kept in terms of timing, but in the interim,

11 Plaintiff had been left without the information needed to move forward. Defendant's delay in

12 sharing its position breached the customary standard of prompt communication in claim

13 handling.

14

**59.**

15 Even when the Y&A report was finally provided, Defendant did not immediately issue

16 a formal denial or approval of specific items—it merely forwarded the conclusions of its

17 consultants. This forced Plaintiff to operate in a fog of uncertainty for months after ASF's

18 report, not knowing which portions of the claim Defendant would ultimately pay or deny.

19

**60.**

20 On April 3, 2024, nearly a year and a half after the fire, Defendant tendered a partial

21 payment and concurrently denied other aspects of the claim. Specifically, Defendant issued an

22 "Actual Cash Value" (ACV) payment based on Y&A's repair estimate. Defendant belatedly

23 made other payments of undisputed loss. In total, to date Defendant has paid Plaintiff

24 $2,478,648.42.

25

**61.**

26 The Y&A estimate put the required building repairs in the range of approximately $2.1

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380   Fax 503.220.2480

1   million. Defendant's ACV payment (after depreciation and deductible) was correspondingly

2   limited—a small fraction of what Plaintiff actually needed to rebuild. At the same time,

3   Defendant formally rejected coverage for the damage to the West crane, maintaining that the

4   West crane had suffered no physical loss from the fire (despite the evidence of necessary

5   repairs). Defendant refused to reimburse the approximately $1,934 cost of the post-fire crane

6   inspection for the West crane. The basis given for these denials was the Y&A engineering

7   report, including the opinion that the West crane and certain structural elements were not

8   significantly damaged meant those items were not covered. Defendant did not at that time

9   address the Ordinance or Law coverage in any detail, other than implicitly by taking the

10  position that code upgrades were not required since, according to Y&A, the damage was below

11  the threshold.

12                                   **62.**

13          Plaintiff, disagreeing strongly with Defendant's coverage position, took several steps

14  to advocate for coverage of the full loss.

15                                   **63.**

16          ASF's engineer Ken Oliphant prepared a Supplemental Report (dated May 31, 2024)

17  responding point-by-point to the Y&A findings and reinforcing that the fire damage was

18  extensive and *had* triggered code upgrade requirements. Plaintiff provided this information to

19  Defendant, hoping to convince Defendant to reconsider.

20                                   **64.**

21          Plaintiff further engaged Clackamas County officials for an independent evaluation. In

22  July 2024, the County confirmed in writing that the Property *must* be brought up to code as

23  part of the fire repairs (due to the "substantial structural damage" and the unpermitted

24  constructions). This County determination directly contradicted the premise of Defendant's

25  denial (which was that code upgrades were unnecessary). Rather than accept the County's

26  determination, Defendant unreasonably relied on the conclusions of its own consultant.

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380   Fax 503.220.2480

**65.**

By August 2024, Plaintiff obtained the $9.6 million repair estimate from BELFOR that was aligned with ASF's scope and presented it to Defendant, illustrating the gap between Defendant's payment and the actual cost of repair, which exceeds the Policy's limit. Despite all this, Defendant refused and has continued to refuse to agree to cover the difference between what it has paid and the Policy limit.

**66.**

In the spring of 2025 Defendant changed adjusters assigned to the claim. In May, 2025, Defendant indicated that it was still investigating Plaintiff's claim. On July 3, 2025, Defendant issued a new "reservation of rights" letter indicating that it was still purportedly investigating Plaintiff's claim and requesting either information that it already had, had already asked for and to which the insured had responded, or information (including an examination under oath) that it could have and in the exercise of due diligence and proper claims handling should have asked for previously.

**67.**

The facts outlined above demonstrate that notwithstanding its statement that it is continuing to investigate the claim, Defendant has denied Plaintiff's claim for full coverage of Plaintiff's loss.

**68.**

Defendant has not paid what it owes under Plaintiff's insurance policy. The Policy provides coverage on a replacement cost basis with a $6,050,000 blanket limit for the building and included "Ordinance Or Law Or Green Standards" ("Ordinance or Law") coverage with no dollar sublimit (meaning code compliance costs are covered in addition to direct damage).

**69.**

Among other provisions, the Policy's Ordinance or Law coverage applies in the context at issue here when: (1) there is an ordinance or law in effect at the time of loss or damage that

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380   Fax 503.220.2480

1  mandates "green standards" or otherwise regulates zoning, land use, or construction of covered

2  property; and (2) that ordinance or law affects the repair or replacement of the lost or damaged

3  covered property; and (3) the insured repairs or replaces the covered property as soon as

4  reasonably possible. In that event, the valuation will include: (a) the replacement cost of the

5  damaged and undamaged portions of the covered property, including necessary and incurred

6  "green expenses"; or (b) the actual cash value of the damaged and undamaged portions of the

7  covered property, if the applicable Loss Payment Basis shown in the Declarations is Actual

8  Cash Value; (c) the costs to demolish and clear the site of the undamaged portion of the covered

9  property; and (d) the increased cost to repair or replace the building to the same general size at

10 the same site, or other covered property for the same general use, to the minimum standards of

11 such ordinance or law or green standards, subject to certain specified exclusions not applicable

12 here. If the insured does not repair or replace the covered property, the Policy provides that the

13 valuation will include: (a) the actual cash value of the damaged and undamaged portions of the

14 covered property; and (b) the cost to demolish and clear the site of the undamaged portion of

15 the covered property.

16                                         **70.**

17        Plaintiff's loss falls squarely within the Policy's Ordinance or Law coverage because

18 there are ordinances or laws in effect at the time of loss or damage that mandate "green

19 standards" or otherwise regulate zoning, land use, or construction of the Property. And those

20 ordinances or laws have affected the repair or replacement of the lost or damaged Property.

21                                         **71.**

22        Among other things, expert engineers determined that substantial structural upgrades,

23 including reinforcement of lateral-force resisting systems and footings, are required to comply

24 with current code in order to obtain the required repair permit.

25                                         **72.**

26        Defendant has failed to acknowledge or accept coverage for these code-required

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Main 503.224.3380   Fax 503.220.2480

Page 15 - COMPLAINT

1  upgrades, despite clear policy language obligating payment where such upgrades are necessary

2  to restore the Property in accordance with governing ordinances and law.

3                                          **73.**

4        Defendant's failure to accept coverage under the Ordinance or Law provision has

5  deprived Plaintiff of the ability to secure financing for repairs, resulting in significant and

6  ongoing losses that would have been avoided had Defendant honored its obligations under the

7  Policy.

8                                          **74.**

9        Defendant's failure to accept coverage under the Ordinance or Law provision has

10  therefore hindered Plaintiff's ability to proceed with necessary repairs or replacements of the

11  covered Property as soon as reasonably possible. The resulting delay has increased the cost of

12  repairs as the costs for materials has increased during the excessive period of time that it has

13  taken Defendant to adjust the claim.

14                                          **75.**

15       Under the Policy Defendant agreed to pay for the "replacement cost of the damaged

16  and undamaged portions" of the property, as well as the "increased cost to repair or replace the

17  building to the minimum standards" of any ordinance or law that affects repair of the damaged

18  property. These provisions squarely apply here: the fire triggered code upgrade requirements

19  that affect both damaged and undamaged parts of the building (for example, undamaged

20  structures must be brought to code as a direct consequence of the fire damage).

21                                          **76.**

22       Defendant's refusal to agree to fund the full scope of repairs up to the Policy's limits

23  constitutes a material breach of the Policy's insuring agreements and coverage grants.

24                                          **77.**

25       Defendant's delays, denial of obvious damage, and abrupt reversal of its position on

26  using a joint engineer all amount to a breach of the duty of good faith and fair dealing that is

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
*Main 503.224.3380    Fax 503.220.2480*

1    implied in every insurance contract.

2    **78.**

3    Rather than treat Plaintiff's interests equal to its own, Defendant looked for ways to

4    minimize its payout.

5    **79.**

6    Defendant abandoned its duties to Plaintiff when the outcome became financially

7    unfavorable. It withheld material information for months and used its superior resources to

8    burden Plaintiff with unjustified delays. Defendant further misrepresented facts and policy

9    provisions in connection with the adjustment and settlement of the claim.

10    **80.**

11    Defendant's actions contravened industry standards for fair practice and diligence that

12    Plaintiff was entitled to expect from its insurer.

13    **81.**

14    Defendant's conduct in handling Plaintiff's claim violated multiple provisions of

15    Oregon's Unfair Claims Settlement Practices Act (ORS 746.230).

16    **82.**

17    Defendant committed multiple unfair claim settlement practices in violation of ORS

18    746.230(1)(a)–(g). These included misrepresenting facts related to the settlement of Plaintiff's

19    claim; failing to acknowledge and respond promptly to communications concerning the claim;

20    failing to adopt and implement reasonable standards for the prompt investigation of claims;

21    refusing to pay Plaintiff's claim without conducting a reasonable investigation based on all

22    available information; failing to affirm or deny coverage within a reasonable time after

23    receiving completed proof of loss statements; failing to make a good faith attempt to promptly

24    and equitably settle Plaintiff's claim after liability had become reasonably clear; and

25    compelling Plaintiff to initiate litigation to recover amounts due by offering substantially less

26    than the amount ultimately owed.

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380   Fax 503.220.2480

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Main 503.224.3380   Fax 503.220.2480

**83.**

Plaintiff cannot obtain a permit to repair the Property without also performing substantial code-required structural upgrades, the cost of which exceeds the Policy's limit of liability.

**84.**

Plaintiff cannot fund the required code upgrades absent a binding commitment from Defendant to cover the costs up to Policy's limits of liability.

**85.**

Defendant's refusal to acknowledge its obligations to pay for the required code upgrades has prevented Plaintiff from obtaining financing or commencing permitted repairs and replacements.

**86.**

As a result, repairs and replacements have not been completed, and Plaintiff has been unable to re-rent the Property at the level that would have been possible if repairs had been completed.

**87.**

Had Defendant timely accepted its coverage obligations and agreed to pay for the necessary repairs and code upgrades, Plaintiff would have been able to initiate reconstruction and likely retain the prior tenants and rental income. Instead, Plaintiff has lost rental income, which is not covered under the Policy.

**88.**

Defendant's unfair conduct included initially agreeing to rely on a structural expert Mr. Oliphant, then disregarding that expert's findings once they confirmed the extent of fire-related damage and the necessity of code-compliant reconstruction. Defendant compounded the resulting harm by repeatedly delaying its investigation, coverage determination, and claim resolution.

**89.**

As a result of Defendant's violations of ORS 746.230(1)(a)–(g), Plaintiff has suffered damages beyond the applicable policy limits or coverages. These damages include, but are not limited to, lost rental income from tenant spaces rendered uninhabitable by the fire, and significant increases in the cost of reconstruction caused by Defendant's delay in investigating the claim and disputing coverage. Defendant's prolonged refusal to accept the repair scope proposed by Plaintiff's experts, and its failure to affirm or deny coverage within a reasonable time, substantially delayed Plaintiff's ability to obtain permits and commence reconstruction of the Property. During the period of delay, construction costs have materially escalated, particularly due to inflation and current tariffs on building materials. Plaintiff is in the process of obtaining updated cost estimates from its contractor but, based on contractor input and industry data, anticipates an increase of at least 20% over the original repair estimate. The increased cost of reconstruction was proximately caused by Defendant's unreasonable delay.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

**90.**

Plaintiff realleges and incorporates by reference the allegations in each paragraph above, as if set forth fully herein.

**91.**

Plaintiff, the named insured on the Policy, entered into a valid and enforceable insurance contract with Defendant under which Defendant agreed to insure the Property against risks including fire. Plaintiff paid valuable premiums in consideration for the Policy and the coverage it provided.

**92.**

The Policy expressly covered direct physical loss or damage caused by fire and obligated Defendant to promptly investigate any such loss and pay all amounts necessary to

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380   Fax 503.220.2480

1   repair or replace damaged property, subject to the Policy's terms, conditions, and limits.

2   **93.**

3   Plaintiff fully complied with all conditions precedent under the Policy, including timely

4   notification of the loss, submission of proof of loss documentation, cooperation with

5   Defendant's investigation, and payment of all required premiums. Alternatively, any

6   conditions precedent were waived, excused, or rendered futile by Defendant's conduct.

7   **94.**

8   Defendant breached the Policy by failing to pay the full amount of covered losses

9   Plaintiff sustained as a result of the October 31, 2022 fire. Defendant further breached the

10  Policy by unreasonably delaying its investigation, disregarding the scope of repair supported

11  by Plaintiff's structural engineer and architect, and refusing to pay for structural and code-

12  required upgrades necessary to restore the Property. Defendant failed to issue a timely or

13  reasonable coverage determination and withheld payments necessary for Plaintiff to begin

14  permitted reconstruction of the Property.

15  **95.**

16  As a direct and proximate result of Defendant's breaches of contract, Defendant has

17  caused and continues to cause Plaintiff damages in an amount to be proven at trial but not less

18  than $3,571,351.58.

19  **96.**

20  Plaintiff is entitled to recover all such damages arising out of Defendant's breach of

21  contract plus prejudgment interest at the Oregon statutory rate of 9 percent per annum under

22  ORS 82.010.

23  **97.**

24  Plaintiff is entitled to recover its reasonable attorney fees and costs herein under ORS

25  742.061.

26  *///*

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
*Main 503.224.3380   Fax 503.220.2480*

## SECOND CLAIM FOR RELIEF

**Breach of the Duty of Good Faith and Fair Dealing**

### 98.

Defendant owed Plaintiff a duty of good faith and fair dealing in connection with the insurance contract issued to Plaintiff. That duty is implied in every contract under Oregon law and exists to ensure that the benefits of the contract are delivered in a manner consistent with the objectively reasonable expectations of the parties.

### 99.

Plaintiff reasonably expected that Defendant would promptly and fairly investigate the fire loss, evaluate the scope of covered damage in good faith, and make timely payments to facilitate repair and reconstruction of the damaged Property.

### 100.

Plaintiff also reasonably expected that Defendant would give meaningful consideration to expert opinions offered by retained professionals that Defendant had agreed to, especially where those opinions were developed in coordination with Defendant's own consultants.

### 101.

Defendant's actions were inconsistent with those expectations.

### 102.

Defendant failed to conduct a reasonable and timely investigation.

### 103.

Defendant refused to accept the repair scope developed by the agreed-upon structural engineer and architect—despite having initially agreed to rely on them—and instead relied on a less comprehensive and inaccurate scope prepared by its own consultant.

### 104.

Defendant unreasonably delayed adjusting the claim, issuing payments, and responding to submitted estimates and engineering documentation.

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
*Main 503.224.3380   Fax 503.220.2480*

**105.**

Defendant's conduct effectively prevented Plaintiff from accessing financing and beginning repairs, even though the policy expressly covered direct physical loss to the Property and did not exclude coverage for code upgrades.

**106.**

Defendant's actions had the effect of undermining Plaintiff's right to receive the benefit of the contract—namely, the prompt payment of covered losses necessary to restore the Property to code-complaint condition in accordance with applicable law.

**107.**

Defendant's conduct was inconsistent with the reasonable expectations of the parties and constitutes a breach of the implied duty of good faith and fair dealing.

**108.**

As a direct and proximate result of Defendant's breach of the implied duty of good faith and fair dealing, Defendant has caused and continues to cause Plaintiff damages in an amount to be proven at trial but not less than $3,571,351.58.

**109.**

Plaintiff is entitled to recover all such damages arising out of Defendant's breach of the implied duty of good faith and fair dealing plus prejudgment interest at the Oregon statutory rate of 9 percent per annum under ORS 82.010.

**110.**

Plaintiff is entitled to recover its reasonable attorney fees and costs herein under ORS 742.061.

### THIRD CLAIM FOR RELIEF

**Negligence Per Se (ORS 746.230)**

**111.**

Plaintiff realleges and incorporates by reference the allegations in each paragraph

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380   Fax 503.220.2480

1  above, as if set forth fully herein.

2  **112.**

3    Under Oregon law, an "insurer" includes any person engaged in the business of

4  entering into insurance policies. ORS 731.106. "Insurance" is defined as a contract to

5  indemnify or pay a specified benefit upon a determinable risk. ORS 731.102(1). Importantly,

6  "[t]ransact[ing] insurance" includes not only issuing policies, but also "the investigation or

7  adjustment of claims or losses." ORS 731.146(1)(e). No person may transact insurance in

8  Oregon without complying with the Insurance Code. ORS 731.022. The Insurance Code

9  includes the Unfair Claims Settlement Practices Act (ORS 746.230) among its enforceable

10  provisions. *See* ORS 731.004. Defendant is an insurer within the meaning of ORS 731.106. It

11  issued the Policy to Plaintiff and undertook multiple regulated insurance activities in Oregon—

12  including the investigation and adjustment of Plaintiff's claim. In doing so, Defendant

13  transacted insurance involving a domestic risk and was required to comply with all applicable

14  provisions of the Insurance Code, including ORS 746.230.

15  **113.**

16    Insurance adjusters—like those acting on behalf of Defendant—are licensed

17  professionals under Oregon law. ORS 744.505 prohibits individuals from acting as insurance

18  adjusters in Oregon unless they are licensed by the Department of Consumer and Business

19  Services. To obtain a license, resident adjusters must satisfy detailed statutory requirements,

20  including passing an examination approved by the Director to test their "qualifications,

21  competence and knowledge" of the Insurance Code. *See* ORS 744.525(1)(b); *see also* ORS

22  744.528 (nonresident adjuster qualifications). Oregon law further mandates continuing

23  education and imposes professional standards of conduct, including prohibitions on material

24  misrepresentation and unethical or incompetent practices. *See* ORS 744.584(1). A licensee

25  engaging in business as an adjuster may not "violate or fail to comply with an applicable

26  provision of the Insurance Code," including ORS 746.230. ORS 744.584(1)(o).

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380  Fax 503.220.2480

Page 23 - COMPLAINT
128969595.11 0083464-00001

STOEL RIVES LLP

760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Main 503.224.3380   Fax 503.220.2480

**114.**

Because Defendant is a corporation that sells insurance and provides insurance coverage to Oregon consumers, the Oregon Legislature through Oregon Revised Statute 746.230 requires Defendant to follow a standard of care when handling claims independent of, in addition to, and outside of the terms of its insurance contract.

**115.**

ORS 746.230 provided explicit notice to Defendant of the unreasonable conduct that is prohibited and did so in terms that are consistent with the standard of care applicable in common law negligence cases.

**116.**

Defendant and its adjusters owed a duty to Plaintiff under ORS 746.230 to not commit or perform any of the certain unfair claim settlement practices.

**117.**

Defendant breached its duty by violating ORS 746.230. That breach was the cause-in-fact of Plaintiff's injuries.

**118.**

Defendant committed multiple unfair claim settlement practices in violation of ORS 746.230(1)(a)–(g), including misrepresenting facts related to the settlement of Plaintiff's claim; failing to acknowledge and respond promptly to communications concerning the claim; failing to adopt and implement reasonable standards for the prompt investigation of claims; refusing to pay Plaintiff's claim without conducting a reasonable investigation based on all available information; failing to affirm or deny coverage within a reasonable time after receiving completed proof of loss statements; failing to make a good faith attempt to promptly and equitably settle Plaintiff's claim after liability had become reasonably clear; and compelling Plaintiff to initiate litigation to recover amounts due by offering substantially less than the amount ultimately owed.

**119.**

Defendant knew, or in the exercise of reasonable care as a corporation engaged in the business of marketing and selling insurance, should have known, that one or more of the foregoing acts or omissions would create a foreseeable risk of harm to Plaintiff.

**120.**

The risk of harm to Plaintiff caused by Defendant's unreasonable conduct was to an interest of the kind that Oregon law intended to protect.

**121.**

Plaintiff is within the class of persons recognized as protected under Oregon law.

**122.**

A mutual expectation of service and reliance existed between Plaintiff and Defendant in connection with the adjustment of the claim. Defendant relied on Plaintiff to provide necessary documentation and cooperate with its investigation, while Plaintiff reasonably expected Defendant to conduct a fair investigation, objectively evaluate the loss, and resolve the claim in accordance with Oregon's statutory standards for good-faith claims handling.

**123.**

Defendant's unfair claim settlement practices caused Plaintiff to suffer extra-contractual damages—economic damages beyond the applicable policy limits—including, but not limited to, lost rental income from tenant spaces rendered uninhabitable by the fire that could have been but have not been repaired in a timely manner due to Defendant's conduct, and significant increases in the cost of reconstruction that have occurred during the pendency of Defendant's improper adjustment of the claim that have increased the cost (which was already in excess of the Policy limit) that Plaintiff will have to pay to fully repair the Property.

**124.**

As a direct and proximate result of Defendant's negligence per se, Plaintiff suffered damages including extra-contractual damages in an amount to be proven at trial, but not less

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380 Fax 503.220.2480

1    than $4,000,000.

2    **FOURTH CLAIM FOR RELIEF**

3    **Declaratory Judgment (ORS 28.010, *et seq*.)**

4    **125.**

5    Plaintiff realleges and incorporates by reference the allegations in each paragraph

6    above, as if set forth fully herein.

7    **126.**

8    Plaintiff brings this claim pursuant to ORS 28.010 *et seq*. for a declaratory judgment to

9    resolve a justiciable controversy between Plaintiff and Defendant regarding the scope of

10   insurance coverage available under the Policy.

11   **127.**

12   Plaintiff and Defendant have adverse legal interests. Plaintiff contends that the Policy

13   obligates Defendant to pay for all fire-related damage to the Property, and for all increased

14   costs of construction required by applicable ordinances or laws to bring the Property into

15   compliance with current building codes. Defendant has disputed and denied those obligations,

16   asserting that code upgrades are not required and refusing to indemnify Plaintiff for the

17   properly adjusted value of its losses.

18   **128.**

19   This dispute involves concrete, existing facts and is not hypothetical or based on future

20   events. The fire occurred on October 31, 2022. The agreed-upon experts have completed

21   investigations and issued detailed repair recommendations, including structural code upgrades

22   required by ordinances and laws. Defendant, in turn, has obtained its own consultants, issued

23   only partial payment, and denied coverage for substantial portions of the loss. The controversy

24   is ongoing and materially affects the parties' rights and obligations under the Policy.

25   **129.**

26   Plaintiff's ability to proceed with permitted reconstruction of its Property, and to obtain

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380  Fax 503.220.2480

1    necessary financing, depends on a binding judicial determination of the parties' respective

2    rights and responsibilities under the Policy. Without such a determination, Plaintiff remains

3    unable to rebuild and continues to incur substantial economic losses.

4                                                    **130.**

5         Accordingly, Plaintiff seeks a declaratory judgment that: (1) Plaintiff has complied

6    with all post-loss obligations under the Policy, including notice, cooperation, and

7    documentation requirements, and has satisfied all conditions precedent to coverage; (2) the

8    October 31, 2022 fire caused direct physical loss or damage to the Property, including the

9    structural systems and both the East and West overhead bridge cranes, and such loss is covered

10   under the Policy's "Building" coverage, subject to the blanket Limit of Insurance of

11   $6,050,000; (3) the Policy's Ordinance or Law coverage applies to the October 31, 2022 loss

12   and obligates Defendant to pay the increased costs that Plaintiff will incur to repair or replace

13   the damaged and undamaged portions of the building to conform with standards of ordinances

14   or laws in effect at the time of loss, including structural framing, foundations, lateral-load

15   resisting systems, and related upgrades; (4) the Policy does not impose a separate dollar

16   sublimit on the amount payable under the Ordinance or Law coverage part; (5) Defendant is

17   obligated under the Policy to pay the full cost of repairs to the damaged and undamaged

18   portions of the building as necessary to comply with applicable ordinances or laws, including

19   the scope of repair developed by Plaintiff's engineers and as required by the Clackamas County

20   building department, up to the limit of its Policy.

21                                                    **131.**

22        Plaintiff seeks such declarations to resolve the ongoing dispute between the parties,

23   remove the uncertainty surrounding Plaintiff's rights under the Policy, and provide necessary

24   relief to enable Plaintiff to proceed with reconstruction required by local ordinance or law.

25   ///

26   ///

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380   Fax 503.220.2480

1    **RESERVATION OF RIGHT TO SEEK PUNITIVE DAMAGES**

2    **132.**

3    Plaintiff reserves the right to move the Court to allow it to amend this Complaint to

4    assert a claim for punitive damages, pursuant to ORS 646.638(1).

5    **PRAYER**

6    WHEREFORE, Plaintiff requests the following relief:

7    A.    On its First Claim For Relief, for judgment in its favor and against Defendant

8    in an amount to be proven at trial, but not less than $3,571,351.58, plus interest under ORS

9    82.010 and reasonable attorney fees and costs under ORS 742.061;

10    B.    On its Second Claim For Relief, for judgment in its favor and against Defendant

11    in an amount to be proven at trial, but not less than $3,571,351.58, plus interest under ORS

12    82.010 and reasonable attorney fees and costs under ORS 742.061;

13    C.    On its Third Claim For Relief, for judgment in its favor and against Defendant

14    in an amount to be proven at trial, but not less than $4,000,000;

15    D.    On its Fourth Claim For Relief, for declaratory judgment in its favor and against

16    Defendant that (1) Plaintiff has complied with all post-loss obligations under the Policy,

17    including notice, cooperation, and documentation requirements, and has satisfied all conditions

18    precedent to coverage; (2) the October 31, 2022 fire caused direct physical loss or damage to

19    Plaintiff's Property, including the structural systems and both the East and West overhead

20    bridge cranes, and such loss is covered under the Policy's "Building" coverage, subject to the

21    blanket Limit of Insurance of $6,050,000; (3) the Policy's Ordinance or Law coverage applies

22    to the October 31, 2022 loss and obligates Defendant to pay the increased costs Plaintiff will

23    incur to repair or replace the damaged and undamaged portions of the building to conform with

24    standards of ordinances or laws in effect at the time of loss, including structural framing,

25    foundations, lateral-load resisting systems, and related upgrades; (4) the Policy does not

26    impose a separate dollar sublimit on the amount payable under the Ordinance or Law coverage

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
*Main 503.224.3380   Fax 503.220.2480*

1    part; (5) Defendant is obligated under the Policy to pay the full cost of repairs to the damaged

2    and undamaged portions of the building as necessary to comply with applicable ordinances or

3    laws, including the scope of repair developed by Plaintiff's engineers and as required by the

4    Clackamas County building department, up to the limit of its Policy.

5          E.      For such other relief as the Court may deem just, equitable, and proper.

6

7

DATED:  September 5, 2025          STOEL RIVES LLP

8

9                                              *s/ Seth H. Row*
                                               SETH H. ROW, OSB No. 021845
10                                             seth.row@stoel.com
                                               CAMERON ZANGENEHZADEH, OSB No. 212756
11                                             cameron.zangenehzadeh@stoel.com
                                               Telephone: (503) 224-3380
12
                                               *Attorneys for Plaintiff*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380   Fax 503.220.2480

Page 29 - COMPLAINT

# EXHIBIT B

1

2

3

4                IN THE CIRCUIT COURT OF THE STATE OF OREGON

5                     FOR THE COUNTY OF MULTNOMAH

6   BLAZE CONE COMPANY,

7                Plaintiff,              No. 25CV49222

8        v.                             ACCEPTANCE OF SERVICE

9   CHUBB INDEMNITY INSURANCE
    COMPANY,
10
                Defendant.
11

12

13        Plaintiff filed a complaint on September 5, 2025 (the "Complaint") and issued

14  Summons to Defendant Chubb Indemnity Insurance Company dated September 5, 2025 (the

15  "Summons").  I, Paul Ferland, am an attorney at Cozen O'Connor representing the

16  Defendant.  I am authorized to accept service of the Summons and Complaint on behalf of

17  the Defendant in the above-entitled action.

18        I hereby accept service of the Summons and Complaint for the Defendant.  By this

19  Acceptance of Service, Defendant does not waive, and expressly preserve, any and all

20  defenses— including, but not limited to, all defenses based on lack of personal jurisdiction—

21  except those based on the effectiveness, regularity or sufficiency of service of process

22  pursuant to ORCP 7.

23  ///

24  ///

25  ///

26  ///


Page 1 – ACCEPTANCE OF SERVICE
150433287.1 0083464-00001

1    This Acceptance constitutes service under ORCP 7 D(3)(a) on the date indicated

2  below.

3

4
DATED:  September 18, 2025

5

6

7                                                    Paul Ferland, NY Bar No.:4361853
                                                     3WTC 175 Greenwich Street 55th Floor
8                                                    New York, NY 10007
                                                     Telephone: (212)453-3914

9                                                    *Attorneys for Defendant*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 2 – ACCEPTANCE OF SERVICE
   150433287.1 0083464-00001

# EXHIBIT C

# In the Circuit Court of the State of Oregon

## For the County of Multnomah

BLAZE CONE COMPANY,

                          Plaintiff,

v.

CHUBB INDEMNITY INSURANCE COMPANY,

                          Defendant.

Case No. 25CV49222

SUMMONS

To  CHUBB INDEMNITY INSURANCE COMPANY, 202B Hall'a Mill Road, Whitehouse Station, NJ 08889

       You are hereby required to appear and defend the complaint filed against you in the above-entitled action within thirty (30) days from the date of service of this summons upon you, and in case of your failure to do so, for want thereof, plaintiff(s) will apply to the court for the relief demanded in the complaint.

**NOTICE TO THE DEFENDANT: READ THESE PAPERS CAREFULLY!**

    You must "appear" in this case or the other side will win automatically. To "appear" you must file with the court a legal document called a "motion" or "answer." The "motion" or "answer" must be given to the court clerk or administrator within 30 days along with the required filing fee. It must be in proper form and have proof of service on the plaintiff's attorney or, if the plaintiff does not have an attorney, proof of service upon the plaintiff.

    If you have any questions, you should see an attorney immediately. If you need help in finding an attorney, you may call the Oregon State Bar's Lawyer Referral Service online at www.oregonstatebar.org or by calling (503) 684-3763 (in the Portland metropolitan area) or toll-free elsewhere in Oregon at (800) 452-7636.

SIGNATURE OF ☒ ATTORNEY ☐ AUTHOR FOR PLAINTIFF

Seth H. Row                   OSB No. 021845
ATTORNEY'S/AUTHOR'S NAME (TYPED OR PRINTED)     BAR NO. (IF ANY)

760 SW Ninth Ave, Suite 3000
                    ADDRESS

Portland     Oregon     97205   (503) 224-3380
CITY          STATE       ZIP        PHONE

                    seth.row@stoel.com
FAX (IF ANY)       ATTORNEY'S E-MAIL ADDRESS (IF ANY)

Seth Row                      021845
TRIAL ATTORNEY IF OTHER THAN ABOVE (TYPED OR PRINTED)   BAR NO.

TO THE OFFICER OR OTHER PERSON SERVING THIS SUMMONS: You are hereby directed to serve a true copy of this summons, together with a true copy of the complaint mentioned therein, upon the individual(s) or other legal entity(ies) to whom or which this summons is directed, and to make your proof of service on the reverse hereof or upon a separate similar document which you shall attach hereto.

ATTORNEY(S) FOR PLAINTIFF(S)

According to ORCP 7A, "a true copy of a summons and complaint' means an exact and complete copy of the original documents. No signed certification to that effect is necessary.

**PAGE 1-SUMMONS.**

150318128.1 0083464-00001

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
*Main 503.224.3380    Fax 503.220.2480*

FORM No. 190 – SUMMONS ©2000
EE

# EXHIBIT D



**User Name:** Marison Zafra
**Date and Time:** Friday, October 17, 2025 8:26☐ AM PDT
**Job Number:** 265587772

## Document (1)

1. _25CV49222, Blaze Cone Company vs Chubb Indemnity Insurance Company_
   **Client/Matter:** 00999997CI
   **Search Terms:** number(25cv49222)
   **Search Type:** Natural Language
   **Narrowed by:**

   | Content Type | Narrowed by |
   | --- | --- |
   | Dockets | Case Status: Open,Unknown,Closed; Court: Multnomah;  > Multnomah |

About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2025 LexisNexis
Marison Zafra

## *25CV49222, Blaze Cone Company vs Chubb Indemnity Insurance Company*

OR Circuit - Multnomah

Multnomah

**This case was retrieved on 10/17/2025**

## Header

**Case Number:** 25CV49222
**Date Filed:** 09/05/2025
**Date Full Case Retrieved:** 10/17/2025
**Status:** Open
**Misc:** (86) Tort - General; Civil

## Summary

**Court Case Status**: Open

## Participants

**Litigants**
Blaze Cone Company
**Plaintiff**

**Attorneys**
SETH H ROW
Plaintiff
Status : Retained
503 294-9401(W)

Cameron C Zangenehzadeh
Plaintiff
Status : Retained
503 294-9524(W)

Chubb Indemnity Insurance Company
**Defendant**

## Events

| Date | Details |
|------|---------|
| 2025-09-05 | Complaint Comment: Breach of Contract; Not Subject to Mandatory Arbitration Created: 09/05/2025 10:25 AM |
| 2025-09-05 | Service Comment: Chubb Indemnity Insurance Company Served: 09/18/2025 Comment: Returned09/18/2025 Created: 09/05/2025 10:25 AM |
| 2025-09-18 | Proof - Service Created: 09/22/2025 10:28 AM |
| 2025-09-18 | Summons Created: 09/22/2025 10:28 AM |

## Proceedings

| Date | # | Proceeding Text | Details |
|------|---|-----------------|---------|
| 09/05/2025 | | Complaint - CM | Pages 29 |

Marison Zafra

25CV49222, Blaze Cone Company vs Chubb Indemnity Insurance Company

| Date | # | Proceeding Text | Details |
|------|---|-----------------|---------|
| 09/18/2025 | | Proof - Service - PRSV | Pages 2 |
| 09/18/2025 | | Summons - SM | Pages 1 |

Copyright © LexisNexis CourtLink, Inc. All Rights Reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

**End of Document**

# EXHIBIT E

1
2
3
4
5
6
7
8

IN THE CIRCUIT COURT OF THE STATE OF OREGON
IN AND FOR THE COUNTY OF MULTNOMAH

9

10

BLAZE CONE COMPANY,                          No. 25CV49222

11
                     Plaintiff,              **DEFENDANT CHUBB INDEMNITY**
12                                           **INSURANCE COMPANY'S NOTICE**
          v.                                 **OF REMOVAL**
13
     CHUBB INDEMNITY INSURANCE               **[CLERK'S ACTION REQUIRED]**
14   COMPANY,

15                   Defendant.

16

17

18

19

20   TO:          The Clerk of the Court;

21   AND TO:      All Parties and Their Attorneys of Record

22          **PLEASE TAKE NOTICE THAT** on October17, 2025, Defendant Chubb Indemnity

23   Insurance Company ("Defendant"), pursuant to 28 USC §§ 1332(a), 1441 and 1446, filed its

24   Notice of Removal of this action, containing a statement of facts to show that this matter may

25   be removed, in the office of the Clerk of United States District Court of Oregon, Portland

26   Division.

DEFENDANT CHUBB INDEMNITY INSURANCE COMPANY'S
NOTICE OF REMOVAL - 1

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
SUITE 1900
999 THIRD AVENUE
SEATTLE, WASHINGTON 98104
(206) 340-1000

80371912\3

1     A copy of the said Notice of Removal is attached as **Exhibit 1**.

2

3    DATED:   October 17, 2025                    COZEN O'CONNOR

4

5                                                By:  ___*/s/ Jodi A. McDougall*___
                                                    Jodi A. McDougall, OSB No. 172703
6                                                    999 Third Avenue, Suite 1900
                                                    Seattle, WA 98104
7                                                    Telephone: 206.340.1000
                                                    Toll Free Phone: 800.423.1950
8                                                    Email:  JMcDougall@cozen.com
                                                    *Attorneys for Defendant Chubb Indemnity*
9                                                    *Insurance Company*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT CHUBB INDEMNITY INSURANCE COMPANY'S
NOTICE OF REMOVAL - 2

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
SUITE 1900
999 THIRD AVENUE
SEATTLE, WASHINGTON 98104
(206) 340-1000

80371912\3

## CERTIFICATE OF SERVICE

The undersigned certifies, under penalty of perjury under the laws of the State of Washington, that the foregoing document was served upon the interested parties in the manner indicated below:

Seth H. Row, OSB No. 021845              ☒    Via Legal Messenger
Stoel Rives LLP                          ☐    Via Overnight Courier
760 SW Ninth Avenue, Suite 3000          ☐    Via Facsimile
Portland, OR  97205                      ☒    Via ECF Filing
Phone:  (503) 224-3380                   ☒    Via E-Mail
E-mail:  seth.row@stoel.com

*Attorneys for Plaintiff Blaze Cone Company*

SIGNED and DATED this 17th day of October, 2025 in Seattle, WA.


_____*/s/ Jodi A. McDougall*_____
Jodi A. McDougall, OSB No. 172703

DEFENDANT CHUBB INDEMNITY INSURANCE COMPANY'S
NOTICE OF REMOVAL - 3

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
SUITE 1900
999 THIRD AVENUE
SEATTLE, WASHINGTON 98104
(206) 340-1000

80371912\3